Lolita B. DEALY, Plaintiff,

v.

Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.

No. 83–1269–CV–W–0–5.

United States District Court,
W.D. Missouri, W.D.

Oct. 16, 1984.

James Marshall Smith, Kansas City, Mo., for plaintiff.

Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., William Raffel, Disability Litigation Branch, Baltimore, Md., for defendant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Plaintiff Lolita Dealy, an unsuccessful Social Security disability applicant, has brought this action seeking relief from an order of the Social Security Administration dismissing her request for a hearing on the basis of res judicata. Proceeding without counsel, the plaintiff filed an application for Social Security benefits on January 11, 1980. This claim was denied by the Secretary, without a hearing, both initially and on reconsideration. On October 26, 1980, the Social Security Administration sent the plaintiff notice of the denial of her request for reconsideration. This notice contained the following language:

> If you believe that the reconsideration determination is not correct, you may request a hearing before the Administrative Law Judge of the Bureau of Hearings and Appeals. If you want a hearing, you must request it not later than 60 days from the date you receive this notice. Read the enclosed leaflet BHA–1 for a full explanation of your right to appeal.

> If you do not request a hearing within the prescribed time period, you still have the right to file another application at any time.

On the basis of this notice advising her that she could file a new application, the plaintiff decided not to request a hearing and did not seek further review of her initial application.

On October 14, 1982, the plaintiff filed a second application for Social Security benefits, claiming disability due to mental confusion, chronic back pain and cardiovascular and respiratory problems. By notice dated January 30, 1983, the Social Security Administration denied the plaintiff's second claim for disability benefits. On March 12, 1983, the plaintiff requested an administrative hearing and provided the Administration with additional evidence of her medical problems. On May 9, 1983, the Office of Hearings and Appeals dismissed the plaintiff's request for a hearing. The Administrative Law Judge (ALJ) found that the reconsideration denial of October, 1980, was binding, that there were no grounds for reopening the case, and that the doctrine of res judicata required dismissal of the case.

In support of her instant request for judicial relief, the plaintiff contends that the notice she received on October 27, 1983 was misleading and violative of due pro-

cess, because the notice gave the plaintiff the impression that she did not need to request a hearing on her first application as she could file a second application and receive legitimate review of such an application on the merits. In addition, the plaintiff contends that the doctrine of administrative res judicata should not apply where no hearing is held on the initial determination. The Court is in agreement with the plaintiff, and concludes that a remand for the purposes of a hearing on the merits of plaintiff's application is warranted under each of plaintiff's alternative theories.

## I. *Factual Background*

The plaintiff applied for Social Security disability benefits on January 11, 1980. The plaintiff complained of having "down days" at least twice a week, leg weakness, nerves, poor circulation, back problems and high blood pressure. Her application was denied, and she requested reconsideration of the denial on May 9, 1980. By letter dated October 27, 1980, the plaintiff's request for reconsideration was denied. Ms. Dealy did not seek further review.

On October 14, 1982, the plaintiff filed another application for Social Security disability benefits. She stated that she was prevented from working because of allergies, swelling, colon problems, and bloating. She stated that she had been disabled since November 16, 1980. In a disability report dated October 12, 1982, the plaintiff complained of mental confusion, muscle coordination problems, sinus problems, facial swelling, nasal drainage headaches, inability to concentrate, dizziness, loss of balance, chronic low back pain, extreme gas, chronic hypertension, emotional distress, coughing, ringing in her ears, blurred vision, itching of the eyes, numbness, circulatory problems, irregular heart beat, weakness, back pain, breathing difficulty, and allergy problems. She alleged that her problems first began May 8, 1970. She noted that she had been forced to resign from several jobs because of health problems. The plaintiff last attempted to work from August through November, 1980, but again had to resign due to health reasons.

In the report of October 12, 1982, the plaintiff noted that she was able to do household activities only on a very limited basis, and that some days she was unable to perform any household activities. She had not had any regular recreational activities or social contacts.

In a vocational report dated October 12, 1982, the plaintiff listed her past jobs. These included nurse's aide, food service work, and salesclerk activities. The jobs listed required constant walking or standing, with the exception of the salesclerk job, which allowed one hour per day of sitting.

The plaintiff's claim for disability benefits was denied and she requested reconsideration on November 29, 1982. In the reconsideration request, she noted that her disability onset date should have been June 15, 1978. In a reconsideration disability report dated November 24, 1982, the plaintiff stated that she had been unable to work after her surgery of June 20, 1978. She stated that after being denied Social Security benefits based upon her application of January 11, 1980, she attempted to return to work. She worked from August 27, 1980 through November 16, 1980 when she left her work because of health reasons. The plaintiff described her work in a work activity report dated November 24, 1982. On November 30, 1982, a Social Security reviewer noted that the work activity constituted an "unsuccessful work attempt."

By notice dated January 10, 1983, the Social Security Administration denied the plaintiff's claim for disability benefits. On March 12, 1983, the plaintiff requested an administrative hearing. She provided the Administration with a description of her medical treatment and problems, as well as a list of her medications.

On March 24, 1983, the Office of Hearings and Appeals acknowledged the plaintiff's request for hearing and indicated that she would be notified of the time and place of her hearing. On May 9, 1983, an Administrative Law Judge of the Office of Hearings and Appeals dismissed the plaintiff's

request for hearing. The ALJ found that the reconsideration decision dated October, 1980, was binding on the Secretary. The ALJ found no grounds for reopening the case and dismissed the case based upon the doctrine of res judicata.

After receiving the notice of dismissal, the plaintiff requested representation by Legal Aid of Western Missouri. On July 12, 1983, the plaintiff, by counsel, requested review of the ALJ's dismissal. By order dated October 5, 1983, the Appeals Council denied the plaintiff's request for review. The Appeals Council "considered" the statements submitted in connection with the request for review, but concluded that the statements were not relevant to the issue. Plaintiff thereafter sought judicial review in this Court.

## II. *Opinion*

### A. *Jurisdiction*

The plaintiff contends that subject matter jurisdiction lies in this Court pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g); mandamus jurisdiction pursuant to 28 U.S.C. § 1361; and federal question jurisdiction pursuant to 28 U.S.C. § 1331.

(1) 42 U.S.C. § 405(g).

■ Section 405(g) allows district court review of "final decisions" of the Secretary. The Secretary contends that her decision not to reopen this instant case is not a "final decision," and, therefore, the Court has no jurisdiction to review this action. *See Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In *Califano*, however, the Supreme Court noted that when constitutional questions are in issue, judicial review pursuant to § 405(g) will be presumed. *Id.* 97 S.Ct. at 986. Similarly, in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court held that § 405(g) provides a jurisdictional basis when the claimant's constitutional challenge is collateral to his substantive claim and there is a possibility of irreparable harm. The Eighth Circuit "has followed *Eldridge* in holding that a federal court has jurisdiction to hear a challenge to a Social Security regulation under § 405(g) as long as the challenge is collateral to the substantive claim and presents a colorable constitutional claim." *Jensen v. Schweiker*, 709 F.2d 1227, 1229 (8th Cir. 1983). A due process claim, such as the one raised by the plaintiff in this case, is a colorable constitutional claim on a collateral issue and, therefore, this Court has jurisdiction pursuant to § 405(g). *See Jensen, supra,* 709 F.2d at 1230 (due process claim in connection with Social Security benefits subject to Court's jurisdiction under § 405(g).

(2) Mandamus Jurisdiction under 28 U.S.C. § 1361

■ In *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 2023, 80 L.Ed.2d 622 (1984). The Supreme Court assumed without deciding that 42 U.S.C. § 405(g) "does not foreclose mandamus jurisdiction in all Social Security cases...." *Id.* The Eighth Circuit has determined that a procedural claim against the Secretary is appropriate for the assertion of mandamus jurisdiction. *Mental Health Ass'n of Minnesota v. Heckler,* 720 F.2d 965, 971 n. 17 (8th Cir.1983). *See also Ellis v. Blum,* 643 F.2d 68, 78–82 (2nd Cir.1981) (mandamus jurisdiction to review state policy allegedly conflicting with federal regulations); *Dietsch v. Schweiker,* 700 F.2d 865 (2nd Cir.1983) (mandamus jurisdiction over challenge to Secretary's procedure).

"The common law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear non-discretionary duty." *Heckler v. Ringer, supra,* 104 S.Ct. at 2023–24. It is clear that the plaintiff has exhausted her available remedies through her attempts to obtain disability benefits through the administrative process. With respect to her due process claim, mandamus jurisdiction exists. *See Soberal-Perez v. Schweiker,* 549 F.Supp. 1164 (E.D.N.Y.1982), *aff'd* 717 F.2d 36 (2nd Cir.1983) (for claim seeking to require the Secretary to provide Social Secur-

ity notices in Spanish, mandamus jurisdiction available to determine whether constitutional duty exists and to review the agency action within the scope of the Administrative Procedure Act). With respect to the plaintiff's claim that res judicata should not be applied in this case, the Court notes that the Eighth Circuit has twice stated that "the Secretary's solicitation of a new application, in our view, constitutes [a Social Security Administration] promise that the defenses of res judicata and collateral estoppel under 20 C.F.R. § 404.937(a) and 404.938a (1979) will not be asserted against [a claimant] should she file a new claim for SSA benefits." *Gipson v. Harris*, 633 F.2d 120, 122 n. 2 (8th Cir.1980). *See also Friddle v. Heckler*, 720 F.2d 24, 25 n. 3 (8th Cir.1983). Accordingly, the Court finds that jurisdiction exists pursuant to 28 U.S.C. § 1361.

(3) 28 U.S.C. § 1331.

■ Generally, 42 U.S.C. § 405(g) precludes federal jurisdiction under § 1331 with respect to claims involving Social Security claims. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 2462, 45 L.Ed.2d 522 (1974); *Jensen v. Schweiker*, 709 F.2d 1227, 1229 (8th Cir.1983). The Eighth Circuit has concluded, however, that § 405(g) does not preclude jurisdiction under § 1331 where a due process claim has the primary goal of obtaining a constitutionally adequate hearing before the Secretary, and where there is no adequate alternative means of obtaining judicial review of a due process claim. *St. Louis University v. Blue Cross Hospital Services*, 537 F.2d 283, 292 (8th Cir.1976). *See also Starnes v. Schweiker*, 715 F.2d 134, 140 (4th Cir. 1983) (jurisdiction exists pursuant to § 1331 to redress violations by Secretary of rulemaking requirements of APA). Accordingly, the Court finds that jurisdiction lies pursuant to § 1331, as the plaintiff has challenged the res judicata effect of the Secretary's regulations.

### B. *Plaintiff's Due Process Claim: Adequacy of the Notice*

By notice dated October 27, 1980, the plaintiff was advised that she did not meet the disability requirements of the Social Security Act. She was further advised of her right to request a hearing, but was also advised that if she did not request a hearing she "still had the right to file another application at any time." The plaintiff, believing a subsequent application would receive a ruling on its merits by the SSA, abandoned her initial application by choosing not to request a hearing or to seek an appeal. Had the plaintiff been aware that her second application would be barred by the doctrine of res judicata, she would have sought a hearing on her initial application.

The requirement of procedural due process imposes constraints on governmental actions which deprive individuals of protected liberty and property interests within the meaning of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). "To have a property interest in a benefit, a person clearly must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Courts have recognized that the interest of an individual in continued receipt of Social Security benefits is a statutorily created property interest protected by the Fifth Amendment. *Mathews, supra*, 96 S.Ct. at 901. *See also Johnson v. Mathews*, 539 F.2d 1111, 1118 (8th Cir.1976).

The Eighth Circuit has not resolved the issue of whether a Social Security applicant has a property interest in disability benefits. In *Gipson v. Harris*, 633 F.2d 120 (8th Cir.1980), the Court assumed "without deciding that an *applicant* for Social Security disability benefits has a constitutionally protected 'property' interest in such potential benefits," and held that "the due process clause did not require the SSA to separately notify claimant's attorney of the reconsideration denial." *Id.* at 122 (emphasis original). The Fourth Circuit in *Adams v. Harris*, 643 F.2d 995 (4th Cir.1981) took

a similar approach in upholding form notices to applicants and expressly did not decide whether a Social Security applicant had a protected property interest under the Constitution. *Id.* at 998.

█ In a dissenting opinion in *Adams,* however, Judge Winter concluded that applicants for Social Security benefits have a protected property interest under the due process clause. The Court is in agreement with Judge Winter's analysis which is fully set out below:

Although the case law on this point is not altogether clear, I think that applicants for Social Security benefits have a property interest cognizable under the due process clause of the Constitution. The district court found such an interest in this case, 474 F.Supp. [974] at 981, and several other lower court decisions, including that of a three-judge district court in this circuit, *Randolph v. United States,* 274 F.Supp. 200, 203 (M.D.N.C. 1967), *aff'd,* 389 U.S. 570, 88 S.Ct. 695, 19 L.Ed.2d 785 (1968), have reached that conclusion. *See also White v. Mathews,* 434 F.Supp. 1252, 1260–61 (D.Conn.1976), *aff'd on other grounds,* 559 F.2d 852 (2 Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). *But see Gendron v. Saxbe,* 389 F.Supp. 1303, 1305–06 (C.D.Cal.) (three-judge ct.), *aff'd sub nom Gendron v. Levi,* 423 U.S. 802, 96 S.Ct. 9, 46 L.Ed.2d 23 (1975). (Fn. omitted)

The Supreme Court's pronouncements in this area are not conclusive, but they tend to support the plaintiffs' contention that their claim of entitlement to Social Security benefits is sufficient to invoke the protections of the due process clause. In *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), for example, the Court stated:

We may accept the propositions advanced by the claimant, some of them long established, that procedural due process is applicable to the adjudicative administrative proceeding involving "the differing rules of fair play, which through the years, have become associated with differing types of proceedings," that "the 'right' to Social Security benefits is in one sense 'earned,'" and that the "extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss' ... Accordingly ... 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'" [citations omitted].

*Perales* involved an application for Social Security disability benefits rather than the termination of such benefits. One year later, in *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), the Court reviewed the procedural protection of property afforded by the fourteenth amendment from a more general perspective. Although *Roth* speaks of the security of interests that a person "has already acquired" in specific benefits, 408 U.S. at 576, 92 S.Ct. at 2708, and explains that to have a property interest in benefits a person must have "more than a unilateral expectation" of that benefit, *id.* at 577, 92 S.Ct. at 2709, it goes on to suggest that the required "legitimate claim of entitlement" may be grounded in a statute defining eligibility, irrespective of whether the benefit claim arises in the context of an initial application or the termination of benefits which have been the subject of a prior determination of entitlement, *id.* Most recently, in *Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976), the Court may have intimated that applicants for statutory (state welfare) benefits are entitled to "less process" than those already receiving benefits, but plainly assumed in its analysis of the available state procedures that such applicants possess an interest protected under the due process clause of the fourteenth amendment.

*Adams, supra,* 643 at 1001–02 (Winter, J. dissenting). Accordingly, the Court finds that the plaintiff in this case has, as a Social Security applicant, a sufficient claim of entitlement to Social Security benefits to trigger a protected property interest.

Once the Court concludes that the due process clause applies to a particular interest at stake, it proceeds to the second stage, which is the identification of the procedures necessary to safeguard that interest. *Vruno v. Schwarzwalder,* 600 F.2d 124, 129 (8th Cir.1979). "The extent to which procedural due process must be afforded the recipient is influenced by the extent he may be 'condemned to suffer grievous loss,' (cite omitted) and depends on whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 1917–18, 25 L.Ed.2d 287 (1970). Three factors are to be considered in a determination of the governmental and private interests affected: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administration burdens that the additional or substitute procedural requirements would entail. *Mathews, supra,* 96 S.Ct. at 903.

As stated by the Supreme Court, the right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest....

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. (citations omitted) The notice must be of such nature as reasonably to convey the required information....

*Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Notice should be "tailored to the capacities and circumstances" of their intended recipients. *Goldberg v. Kelly, supra,* 90 S.Ct. at 1021. Adequate notice requires accuracy in the description of legal rights and options available to parties. *See Ellender v. Schweiker,* 575 F.Supp. 590 (S.D.N.Y.1983); *McCubbrey v. Boise Cascade Home & Land Corp.,* 71 F.R.D. 62 (N.D.Cal.1976).

As previously noted, the plaintiff, proceeding without counsel and unaware of the doctrine of administrative res judicata, chose not to request a hearing or pursue an appeal of the denial of her initial application for disability benefits. In making this decision, the plaintiff relied on the Secretary's notice that she had "the right to file another application at any time." The essential due process issue involved is whether the Secretary has an affirmative obligation to avoid providing Social Security applicants with misleading information. Clearly that duty exists.

The private interest involved is both significant and obvious. The plaintiff, who has paid into the Social Security program for many years, may be entitled to receive disability benefits. Moreover, plaintiff's current financial situation indicates a need for additional financial support.[1] With respect to the risk of error factor, it is apparent that had the plaintiff been adequately notified of the preclusive effect of res judicata, she would have chosen to contest the denial of her initial application. Finally, there is no significant financial or administrative burden associated with the requirement that the government supply the plaintiff with accurate information.

---

1. Plaintiff and her husband, who also is disabled, must survive on $665 per month in disability benefits received by her husband. Because of her husband's income, she is not entitled for other need-based programs. During the past year, plaintiff and her husband have accumulated over $4,000 in unpaid medical expenses not covered by insurance.

Recently, the United States District Court for the Eastern District of New York held Medicare review determination notices sent to beneficiaries to be constitutionally inadequate and ordered that the notices be changed to provide claimants with comprehensible explanations of the actual reason full reimbursement was denied. *David v. Heckler,* 591 F.Supp. 1033, (E.D.N.Y.1984). The Court noted that the "recipients of the review letters may think they understand or be hesitant to admit they do not understand them. The fact is that the letters are written at a level well beyond most in this segment of the population, with no discernible added benefit from complexity of information provided. The language used is bureaucratic gobbledegook, jargon, doubletalk, a form of officialese, federalese and insuranceese, and double speak. It does not qualify as English." *Id.* at 1043. The language in the instant case, although not complex or confusing, is more offensive than the notice discussed in *David* because it serves to mislead and deceive the disability applicant and denies the applicant the right to make an intelligent and informed decision.

Accordingly, because the notice given the plaintiff is constitutionally deficient, the Court will order that the Secretary afford the plaintiff a full, fair and complete administrative hearing on the plaintiff's second application without regard to the decision made with respect to the first application.

C.  *The Application of Administrative Res Judicata Without a Prior Administrative Hearing*

The Secretary dismissed the plaintiff's application without a hearing based upon the following regulations.

20 C.F.R. § 404.918 *Reconsidered determination.*

After you or another person requests a reconsideration, we shall review the evidence considered in making the initial determination and any other evidence we receive. We shall make our determination based on this evidence.

20 C.F.R. § 404.920 *Effect of a reconsidered determination.*

The reconsidered determination is binding unless—(a) You or any other party to the reconsideration requests a hearing within the stated time period and a decision is made; ...

20 C.F.R. § 404.957 *Dismissal of a request for a hearing.*

An administrative law judge may dismiss a request for a hearing under any of the following conditions:

\*    \*    \*    \*    \*    \*

(c) The administrative law judge decides that there is cause to dismiss a hearing request entirely or to refuse to consider any one or more of the issues because—(1) the doctrine of *res judicata* applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action; ...

Several courts have stated that the doctrine of administrative res judicata may be applied to a second administrative proceeding even in the absence of a hearing on the initial determination. *See Gaston v. Richardson,* 451 F.2d 461, 465 (6th Cir.1971); *Leviner v. Richardson,* 443 F.2d 1338, 1342 (4th Cir.1971). On the other hand, some district courts refuse to apply res judicata where there has been no hearing. *See Gilliam v. Gardner,* 284 F.Supp. 529 (D.S.C.1968); *Townend v. Cohen,* 296 F.Supp. 789 (W.D.Pa.1969).

None of these courts, however, have sufficiently addressed the issue of whether the practice of invoking res judicata is consistent with the statutory framework of the Social Security Act and with the principles underlying the doctrine of res judicata. Recently, the Eighth Circuit has stated:

We agree with Professor Davis that the mere fact that Social Security proceedings, strictly speaking, do not involve "opposing parties" and are not "adversarial" should not bar application of the

doctrine of administrative res judicata. 4 Davis, *Administrative Law Treatise* § 21:3, at 53–55 (2d ed. 1983). Where a hearing is held, the claimant is entitled to be accompanied by an attorney, evidence is introduced, and parties are subject to examination, we believe that the proceeding is sufficiently "judicial" to justify according preclusive effect to the outcome. The question whether the same result would obtain where the prior determination of disability was made without a hearing is not before us, and we do not decide it. For a cause holding the doctrine of administrative · res judicata inapplicable in such a situation, see *Delamater v. Schweiker*, 721 F.2d 50 (2d Cir. 1983).

*Rush v. Secretary of HEW*, 738 F.2d 909, 914 n. 4 No. 83–2695 (8th Cir.1984).

■ The practice of administrative res judicata has been approved by the Supreme Court in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Id.* 86 S.Ct. at 1560 (cites omitted). If "an administrative proceeding has not been of an adjudicative nature, a decision arrived at by the administrative agency cannot have res judicata effect." *Delamater v. Schweiker, supra,* 721 F.2d at 53. Only what is adjudicated can be res judicata, and administrative action other than adjudication cannot be res judicata. *Associated Industries of New York State, Inc. v. United States Department of Labor*, 487 F.2d 342, 350 n. 10 (2d Cir.1973). "An action taken by an administrative agency to grant or deny a benefit is not an adjudicated action unless the agency has made its decision using procedures substantially similar to those employed by the courts." *Delamater, supra,* 721 F.2d at 53. Use of adjudicative

procedure is necessary to produce an adjudication that is binding under the rules of res judicata; where there is no hearing, no testimony, no subpoenaed evidence, no argument, and no opportunity to test any contention by confrontation, the doctrine of administrative res judicata has no application. *Id.* at 53–54. "Although application of the doctrine of res judicata to administrative decisions serves a useful purpose in preventing relitigation, it is not applied with the same rigidity as its judicial counterpart." *Brinker v. Weinberger*, 522 F.2d 13, 15 (8th Cir.1975).

■ Moreover, it is apparent that the regulations pertaining to res judicata adopted by the Secretary are in conflict with the Social Security Act itself. Pursuant to 42 U.S.C. § 405(a), the Secretary has the "full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter...." *Id. See McCoy v. Schweiker*, 683 F.2d 1138, 1143 (8th Cir.1982) (the Secretary is empowered to make rules and regulations so long as they are not inconsistent with the provisions of the Act). Where a regulation "is inconsistent with the [Social Security] statute it must, of course, give way." *Marion v. Gardner*, 359 F.2d 175, 181 (8th Cir. 1966).

■ According to 42 U.S.C. § 405(h), the "finding and decision of the Secretary *after a hearing* shall be binding upon all individuals who are parties to such hearings. *Id.* (emphasis added). It is apparent that the language of § 405 suggests that for a Social Security proceeding to be of an "adjudicative nature," there must be a hearing resolving the contested issues. Because the regulations allow for the dismissal of an application without the necessity of a hearing in the first instance, the regulations are inconsistent with the Social Security Act and "must, of course, give way."[2] *Marion, supra,* 359 F.2d at 181.

---

**2.** Even if the regulations cannot generally be classified as inconsistent with the Social Security Act, the Court concludes that the doctrine of

res judicata cannot be applied under the specific facts of this case because the plaintiff was advised, though incorrectly, that she could file a

Accordingly, it is hereby

ORDERED that the defendant's motion to dismiss is denied.

It is further

ORDERED that, with respect to the issues contained in this order, the plaintiff's motion for summary judgment is granted. It is further

ORDERED that the plaintiff's motion for remand is granted, and the Secretary is to promptly afford the plaintiff a full hearing on all issues involved relating to her second application for Social Security Disability benefits. This hearing is to be held without regard to the principle of res judicata, and without regard to the issue of whether the plaintiff has submitted "new and material evidence."

second application and forego a hearing on her first application. The subsequent application of res judicata in the instant case must be reversed because "the Secretary's solicitation of a new application, in our view, constitutes [a] promise that the defense of res judicata and collateral estoppel under 20 C.F.R. § 404.937(a) and 404.-938(a) (1979) will not be asserted against [a claimant] should she file a new claim for SSA benefits." *Gipson, supra,* 633 F.2d at 122 n. 2; *Friddle supra,* 720 F.2d at 25 n. 3.